Judge Underwood
delivered the opinion of the court.
Chief Justice Robertson did not sit.
These causes were consolidated in tlie circuit court. They will be decided together here. The subject of controversy is a small triangula?piece of land, considered of great value in consequence of its approximation to the salt well of the appellants on Goose Creek, in the county of Clay.
The appellants claim the land in controversy in virtue of a patent founded on a seminary right, bearing date, the 14th March, 1812.
Bates, in the bill filed by him, claims the land in virtue of a patent dated the 10th July, 1812, founded upon a county court certificate in the words following, to wit
“ Madison County Sct. May Term, 1803. Gn the motion of Richard Smith, satisfactory -proof was made to this court, that the said Richard •is entitled to four hundred acres of land lying on '■Collins’ Fork of Goose Creek, by virtue of his having improved the same agreeably to an act of assembly for settling an improving the vacant lands of this commonwealth, and located as follows, to wit. Beginning ten poles above a sycamore tree, corner to Governor Garrard’s survey of 500 acres, and running up the Creek with the genera] course thereof for quantity so as to include the Creek in or near the centre of the survey; and it is ordered that a. certificate issue accordingly.”
Bates, Garrard &c. in the bill filed by them, claim the lapd in virtue of a patent to them dated the 7th *539 January, 1S28, founded on a certificate granted by the county court in the following words, to wit :•
“ Madison County Set. July Court, 1803. On motion of Samuel Smith, satisfactory proof was made to the court, that the said Samuel is entitled to 1500 acres of land, lying and being in the county aforesaid, on the head waters of Goose Creek, a branch of Kentucky river, including his improvement, and also Salt Lick, by virtue ©f his-having' hup-’oved the same agreeably to an act of the generalassembly for settling and improving, the vacant lauds of this commonwealth, and located as follows, to wit: Beginning 100 poles east o.f the upper cud of his improvement, thence north 800 poles, thence west 300 poles, thence south, thence to the be ginning for quantity.”
The party, complainant, in each bill relied on the «quity derived from the' certificates aforesaid, and insisted that it should prevail against the elder legal' title of the appellants.
The circuit court gave a decree, in each case, in favor of the complainant.
From the testimony in the cause, there can be nofioubt of the notoriety of Goose Creek, Collins’Fork of Goose Creek, the sycamore corner to Garrard’s 500 acres survey, and the settlements of Richard and Samuel Smith at the dates of their respective certificates. The position of these objects being known, there could be no difficulty in surveying the certificates according to their calls, and there is no doubt that surveys thus made would include, in that upon Samuel Smith’s certificate, all the triangle in contest, and in that upon Richard Smith’s certificates all of it except a very narrow slip. Unless, therefore, some one or more of the objections, taken by the appellants to the validity of the equity founded on said certificates, should prevail, the decree must be affirmed. We shall proceed to notice these objections.
It is contended, that both of the certificates are void, because the settlements of Richard and Samuel Smith, in virtue of which the certificates were *540 egranted, were not on vúcant Ians’. And it is also untended, that the whole of the land, in contest, is covered by a patent to Reynolds dated in 1786. Wherefore, it is insisted by the appellants, that no decree can be rendered against them. It appears that the settlements and improvements made by the Smiths are situated upon a tract of 600 acres, granted to J. Pogue in 1799. The position of Reynold’s claim is not identified by the proof. We cannot decide that it covers the land in controversy. The investigation must, therefore, be confined to the effect which Pogue’s claim has upon the certificates. Pogue’s claim does not cover the triangle now in dispute, hut if the consequence of its covering the settlements be, that the certificates are void, the equity deducible from them, fails, and the appellees have no right to recover.
Though (he settlement, in virtue of which county court granted certificate, be within appropriated land, yet the certi ficate not void; all the lan i not embraced by the certificate, and unappropriated by prior claim, may be held under such certificate. See Acts of 1795:97-8-9; 1800, 1801, 1804; II Litt. Stat 95,273, 381. 420,455; III Litt. Stat. 196.
We are of opinion that the certificates are not void, although the settlements, in virtue of which they were granted, are included within the bounds of Pogue’s patent. The first act passed by Kentucky providing for the appropriation of her vacant lands, was approved in December, 1795 On the 1st of March, 1797, the legislature made provision for those who had settled on military claims, by mistake, by permitting them to remove, settle on and appropriate other .lands which were vacant. I Littell’s Laws, 686. Similar provisions were made in 1798, 1799 and 1800. See II Littell’s Laws, 95, 273 and 381. In 1801, the law allowing settlers who, through mistake, had settled appropriated lands, to remove their certificates, was made perpetual. See II Litt. Laws, 455. The act of 1801 adopts the second section of the act of 1800, which provides for the removal of the whole or any part of the certificate. The act of 1799 shows that it was the intention of the legislature to permit the removal of the whole or any part of a certificate granted for a settlement on a military or other prior claim. The first act, allowing county courts to grant certificates for settlement, was passed December 20th, 1800. See II Litt. Laws, 420. All these acts ave parts of the same system, to wit, to appropriate the vacant lands owned by the state and to *541 •provide for the settlement of the-country ; and, therefore, the act of 1801, although adopted in reference to certificates granted -by commissioners, would likewise embrace certificates granted by the county courts. But by an act of December, 1804, county courts were authorized to permit the withdrawal of the Whole or any part of any claim entered on any military or appropriated land, and the relocation thereof on any unappropriated land. Ill Litt. Laws, 196. These acts of assembly clearly shew, that instead of' its being designed by the legislature to make a certificate void, because the settlement happened to be upon a military or other prior claim, it was intended to secure to the settlev all the land which may be within the bounds of his original certificate’, not taken by tiie prior claim, and to indemnify him for the portion lost, by permitting a re-location, pro tanto, elsewhere. So far, therefore-, as the triangle in controversy is concerned, we perceive no objection to the decrees rendered, because the settlements were on Pogue’s patent.
As the proof does- not identify Reynold’s patent boundary, and satisfy us that his title embraces the triangle, there is no necessity for deciding whether the appellants would, or would not, be protected bv Reynold’s claim had they shewn it embraced the land in controversy. Hence we shall pay no further .attention to this part of the argument of counsel.
The next position, assumed by the appellants, which we shall examine, is their reliance upon the statute of limitations of seven years. Both bills were filed on the 18th March, 1824. It seems from the proof, that the appellants liad possession, by the settlement of a tenant upon Pogue’s survey, which they claimed, within the hounds of their 100 acres seminary claim, and likewise within the bounds of the surveys made upon each certificate granted to the Smiths as far back as 1810. That the possession by the residence of the tenant was continued up to the time Hugh White moved on the land, and that his possession has been continued by actual residence on the land common to the survey of Pogue, the geminary survey, and the surveys on the certificates *542 from the the timé he settled' thereon, in 1818, until after the institution of these suits. The dwelling ■ bouses occupied by White and his tenant are not sitnated upon the triangle in dispute. But as far back as 1814 or 1815, White extended his fences upon tbe triangle, and actually enclosed part thereof, connecting the enclosure with that about the houses, except they be considered as separatee! by a lino passing between. Bates, by himself and tenants, has been in the actual possession by residence on the survey, made in Samuel Smith’s certificate, since. 1810. His and his tenant’s residence was outside the triangle in contest. Bates and Garrard, more than seven years before the institution of the suits, by agreement, surrendered the possession to tho Whites of all the land within Pogue’s survey-' — • These being the facts, the question is, whether they constitute a bar in favor of the appellants.
Seven years i-.etual occuunder till odeducible of recotrl, whether by one or more, provided they be connected with each other, by title or estate, as vendor and vendee, landlord and tenant, ancestor ftitutes^bar in virtue of the act of 1809 against all adversary claimants.
lt is very clear, that II. White had not himself" been seven years actually settled on any part of his seminary claim prior to the institution of the suits, and unless he can obtain the benefit of the settlement ancj residence of his tenant, and add that to his own, he cannot make out the length of time required by the statute. ■ But if he can avail himself of the settlement and residence of his tenant, and couple that with his own, lie may make out the bar provided ' for by the statute ; and then, if he can shew that he is protected to the limits of his seminary claim, it will follow that no decree should have been rendered against him and his co-defendant.
The limitation of seven years, provided by the statute of 1809, begins to run from the date of the settlement,provided the settler is connected with such a title as the law requires at that time; if he is not, then it runs from the acquisition of the title. Here the title of the appellants was acquired in 1812, subsequent to the settlement made by the tenant, and therefore the limitation began to run from 1812. If White's te ¡ant continued to reside on the land for seven years after title was acquired, and then the landlord came in immediately upon the removal of the tenant, we see no reason why he should not be *543 permitted to avail himself of the protection which the statute wonkl have afforded the tenant, had he continued his possession, in the same inaner that a vendee is allowed the benefit of the previous settlement and possession of the vendor. The object of the statute was to secure the domicils of families, and the land connected therewith, and where sales were made, the possession of the vendor, by an express provision, inures to the benefit of the vendee. The design of the statute equally requires the protection of the landlord who comes in after the tenant’s term may have expired, and, therefore, an interpretation of the statute according to its spirit requires that the settlement and possession of the tenant should inure to the benefit of the landlord, and be accounted his. So, also, the settlement of the father under title and a continued occupancy for one or more years, might be united with the continued settlement and occupancy of the heirs after the father’s death for the purpose of making the bar complete, although it is a case not expressly provided for by the words of the statute. The actual occupancy of the land, by settlement of seven years, under a title deducidle of record, constitutes the bar which the statute intended to provide, and whether there be one or more occupants during the seven years is immaterial, provided they are connected with the same title, and hold under one another in succession or for each other. The actual residence upon the land is the best notice to adverse claimants, that the possessors are holding and enjoying’ the property as their own, and if an adverse claimant lies by for seven years under such circumstances, it was the intention of the statute to protect the domicil thus settled, and to give peace to its inhabitants. We have found nothing in the numerous decisions growing out of the act of 1809, which conflicts with the foregoing views. The case of Skyle’s Heirs vs. King’s Heirs, II Marshall, 385, would seem to justify the idea that seven years possession, without a settlement and residence on the 'land, would be sufficient. Subsequent cases, however, shew that an actual settlement and residence are required. See III Marsh. 133; I Litt. Rep. 172; *544 II Litt. Rep. 160; III Litt. 444; III Monroe, 164¿ V Monroe, 214. In the ca«e in fifth Monroe, the court say, “ a defendant to avail himself of the act. of 1809 must shew a connected title in law or equity with an adverse interfering claim more than seven years before suit brought, coupled with actual oc*
The settlement must be raadc upon V <0 ia asserted” and continuducible of record for sev1s»sLb,<'r foro fhfí Fiat uto of 1S09 furnishes a bar.
cupancy.” it may be inferred from this language, that the “ actual occupancy” required is not necessarily that of the defendant, but may be that of another with whom the defendant is connected by the relation of vendor and vendee or landlord and tenant.
T'he foregoing considerations have brought us to the conclusion that the appellants have shewn such a settlement and continued possession for seven years as will protect, them, provided the benefits resulting from the settlement can be lawfully extended so as to include the triangle now in contest.
^ contended, however, that upon no principle can the benefit of the settlement be so extended, be'cause the houses in which the settlers actually lived are not situated upon the said triangle. The case of Anderson vs. Turner, III Marshall, 134, is cited in support of the argument. We concede, according ^>e at,fhorjtv of th at case, the settlement must he made “upon the land to which the claim is asserted” before the statute can furnish a bar. The en-T'ft.W therefore, in this case is, whether the settlement has not been so made, within the meaning of the statute. The claim set up in the case of Bates, is Richard Smith’s certificate, and the survey made thereon.The claim set up in the bill of Bates, Garrard &e. is Samuel Smith’s certificate and the survey made thereon. "The praver of each bill is, that the defendants be compelled to relinquish to the extent of the interference. Now the settlement is within the bounds of both survevs made on the certificates granted to the Smiths within Pogue’s patent and within the seminary claim granted to.the Whites, although not upon the triangle down to which the controversy is narrowed. We sav the controversy is narrowed down to the triangle, because the appellees have, for reasons not necessary to be given, no shadow of equitv to an sT land within Payee’s patent. Bat does the circumstance of. the appellees having *545 no right to recover the settlement, although included within the claim set up by them, restrict the protection which the statute of limitations affords, to the land around the settlement; and to which the appellees have no equity ? We think it does not. Could the appellees, by relinquishing five or ten acres around the settlement, thereby get clear of the «fleets of the statute upon the balance of the land common to the conflicting claims ? Certainly not; for if they could, the statute would, by such an artifice, be defeated of its object. As we understand the statute, if the defendant settles within the lap with the intention of possessing his entire tract, then the statute runs in his favor for all the land common to the two claims; and if his adversary does not institute his action within the seven years, he is barred for all the land common to the conflicting titles. The idea of relinquishing the acre on which the dwelling houses stand, and recovering the residue of the interference, is altogether repugnant to a rational interpretation of the statute. If, therefore, the possession of White, emanating from and connected with his settlement, extends to the limits of iris seminary claim, the appellants are entitled to the protection afforded by the statute, unless .its operation be avoided by some of the considerations hereafter to be noticed.
The case of Cates vs. Loftus’ heirs, IV Monroe, 442, is an authority sufficient to shew that the possession of White extends to the limits of his seminary claim. As the settlement was made within the interference, the protection afforded by the statute of 1809 must he co-extensive with the possession, and therefore includes the triangle. But it is insisted by way of obviating this conclusion, that Bates anil Garrard, in 1815, relinquished to White their right and possession to the extent of the interference with Pogue’s patent, and that in consequence of the agreement to that effect, Bates &c. should be regarded as remaining in possession of the triangle, because that is situated outside of Pouge’s patent. Such a conclusion cannot be sustained, because it is in direct opposition to the fact that White, for more than seven years prior to the institution of *546 the suit, extended his actual enclosure over upon ths triangle, claiming the whole of it. This gave him possession to the limits of his seminary patent.
It is also insisted, that the relinquishment of 1815 should, have the effect of restricting the protection, afforded by the settlement, to the bounds of Pogue’s patent. We cannot perceive any good reason for tolerating such an idea.
The statute of 1809 began to run in White’s favor from the date of the patent founded on the seminary claim in 1812. The running of the statute extended to the whole land common to the conflicting claims. Now we know of no method to arrest the running of the statute after it commences, unless the title, by act of God, or operation .of law, be cast up-en some one laboring under the disabilities provided for in the statute ; or unless there be some interruption of the continuity of the possession by settlement ; or unless the possession be converted from its adverse character into that which is friendly. None of these things appear to have taken place. To give the relinquishment of 1815 an operation to that effect would be to introduce, an exception unknown to the statute, and would be an exercise of legislative power.
It is moreover contended, by the appellees, that the settlement of White, and the extension of the enclosure upon the triangle more than seven years before the institution of this suit, cannot protect (he appellants under the operation of the act of 1809, because Bates was a settler, and residing upon a part of the land surveyed in virtue of Samuel Smith’s certificate. The case of Hunt &c. vs. Wickliffe, II Peters, 212, is cited, and the conclusion attempted to be drawn from the facts in this cause, -and the decision of the supreme court is, that as Bates resided ■on the land surveyed under S. Smith’s certificate, if that certificate he valid, his residence should be regarded as conferring upon him “ constructive possession of all the land not occupied in fact by his adversary.” The statute of 1809 had no application to the case of Hunt &c. vs. Wickliffe, as .the supreme court delares in the opinion given) and the facts of *547 that case, in relation to the possession, are materially variant from the facts in the present case. Both WicklifFe and Hunt liad possession, within the lap or interference, by actual occupancy ; thus circumstanced, the court decided that the party having the better right was in constructive possession of all the land not adversely occupied in fact. But in the present case, Bates’ actual occupancy was not within the lap or interference. White’s possession, therefore, must be regarded as entire, and-covering-ths whole triangle, to the exclusion of Bates. The decision of the supreme court has no operation on the controversy, and it is unnecessary to say whether we do or do not approve its doctrine in making possession under an entry, which is valid, control and limit the possession under the elder grant.
Deft must set potation fn bar of adversary claim^/notex^ tend theproí1g(^Df aot of
It results from the foregoing view of the controtroversy, that the appellants were protected by the statute of limitations, and that the court erred in decreeing against them in the suit instituted by Bates upon Richard Smith’s certificate, the answer to the bill in this case having relied upon the limitation of seven years.
The decree in this case must, therefore, be reversed, with costs, and the cause remanded, with directions to dismiss the bilk
Butin the case of Bates, Garrard &c. vs. The Whites, the defence growing out of the statute of limitations has not been relied on in- the answer, and cannot, therefore, be noticed. Hence it becomes important to enquire more particularly into the objections, made by the appellants, to the equity asserted by the appellees under Samuel Smith’s certificate,
It is contended, that Samuel Smith’s certificate for 1500 acres is void on its face, because the county court had no authority to grant it. We readily concede, that under the act of 1800, II Litt. Laws, 420, county courts had no authority to grant certificates for a larger quantity of acres than 400. If a certificate was granted under this act for a greater quantity than 400 acres, and based upon no other consideration than improving and occupying as the act requires, we should not hesitate to declare it void. *548 The certificate in question must be sustained by the act providing for disposing of salt licks and salt springs, III Litt Laws, 49, if there be any law which can su.-tain it. The last sentence of the act *800 prohibited the location of any salt lick or spring, with 1000 acres of land around the same, including the lick or spring,, in the centre of a square, to be bounded by lines running to the cardinal points. By the act of 1803, the legislature subjected salt licks or springs to appropriation. The act provides, “that if any settler has included in his settlement, made under any former law, a salt lick or spring, or may hereafter, by virtue of this act, include in his settlement any such lick or spring,such settler may obtain a title therefor upon paying into the treasury six shillings for every acre which he or she may think proper to survey around or adjacent to said lick or spring, which survey shall not include less than 1000 acres, if so much can be had vacant.” By a proviso, nothing contained in the act is to effect the claim of any settler within the bounds of said 1000 acres where such settler shall pay one dollar per acre" for all land claimed by him agreeable to the rules and regulations of this act, and “to obtain a title to the said salt spring or lick, and the said land around the same as aforesaid, the same proceedings shall be had and pursued as is directed by the act entitled “ an act to amend the act for settling and improving the vacant lands of this commonwealth.” The act referred to is an act passed in 1801, II Litt. Laws, 459, but when it is examined, it will be found, that it does not direct particularly the mode to be pursued in appropriating vacant lands. It only exempts settlers from burdens and difficulties which were imposed by the law of 1800, (which is the root from which all the authority of the county courts springs,) and lengthens the time to obtain warrants &c. As the act of 1803 clearly intended to subject salt licks and springs to appropriation, and in prescribing the mode by which it was to be accomplished, referred to the amendatory act of 1801, which contains no specific directions, we feel bound to take the act of 1800, modified by the act of 1801, as fur *549 lushing the rules by which the appropriations were to be made, connecting therewith the provisions of the act of 1802. Viewing these different acts in connection, the following rules, it seems to us, should be observed in appropriating a salt lick or spring.
1. The claimant must be a settler.
2. The claim must commence witii the certificate to be granted by the county court.
.3. The certificate must include the settlement and salt lick or spring, and contain a special location of the land intended to be appropriated
4. The location in its length should not exceed its breadth more than one third, unless interrupted by prior claims.
5. The face of the certificate should shew that .the claimant intended to appropriate a salt lick or spring, where the quantity of acres granted exceeded 400.
The certificate of Samuel Smith shews, upon its face, that the design was to appropriate a-salt lick, and an improvement made by him under the act for settling and improving vacant lands ; and it contains, conceding the notoriey of the improvement, a very special location. But the location given exceeds its length in breadth more than one third, and is silent in regard to the necessity of assuming that' shape in consequence of the position of prior claims. Tiie certificate does not, in express terms, denominate Smith a settler. Is it void, because the length of the location is greater than the law allows, provided prior claims do not exist? or, rather, is it void, because the position of the prior claims arc not described in the location, and because Smith’s improvement is not denominated a settlement ? We think it is not.
The rules given by the legislature were for the observance of the county courts, and should be respected by them in deciding and adjudicating upon the applications of persons for certificates. If the certificate be granted for such quantity of land as they had-authority to grant, and. the location be- *550 special, a valid ecpiity passes to the grantee against. ail subsequent claimants from the commonwealth; and we are bound, in a controversy with such claimants, to take it for granted that the county court enquired into the existence of all the facts upon which the law authorized them to grant the certificate, and tiiat the facts at the time authorized the quantity of the certificate as issued. If the county court, in its certificate, should say no more than barely to shew their authority for acting, and then should grant a certificate for a tract of land, by a special location, we think it would pass a valid equity to the grantee. We would not reinvestigate the facts for the purpose of determining that the county court erred, and thereby to sustain the claim of one originating Subsequent to the certificate. We shall, therefore, take it, that the county court, in adjudicating upon the application of Samnel Smith for a certificate, investigated and decided that the position of other claims authorized the location as made, and that Smith, as a settler, had a right to appropriate his improvement and the salt lick. These views are fully sustained by the doctrines contained in the cases of Ward and Renton vs. Lee, I Bibb, 18; Speed vs. Severe &c. II Bibb, 134; McNitt vs. Logan, Litt. Sel Cases, 67; Loftus &c. vs. Mitchell, III Marshall, 598.
If we are correct in the position, that the facts existing justified the location as made, at least that they must be so regarded, as it relates to White, a subsequent claimant, and that the certificate of Samuel Smith gave him a valid equity, we cannot admit, as contended by the counsel for the appellants, that.a relinquishment of a part or parts of the land embraced by the certificate, because it is covered by paramount claims, can vitiate the equity to the part not relinquished. We have already shewn, that a person settling by mistake on appropriated land, and obtaining a certificate including some land which was vacant, could not be prejudiced in his claim to the vacant land, by removing so much of his certificate as interfered with the paramount claim. In like manner, we cannot perceive how a surrender or relinquishment, which the law tolerates, of a part *551 which cannot be held owing to prior claims, shall subject the balance, not relinquished, to appropriation as vacant lands.
The argument, that the claim, founded on Samuel Smith’s certificate, is void for failing to obtain a warrant, cannot be sustained if we are correct in the position that the county court properly granted the certificate. The act of assembly passed in 1803, III Litt. Laws, 132. and the case of Loftus &c. Sharp, III Marshall, 597, are complete answers to the argument.
We are of opinion, that the apnellees have shewn a valid equity to the triangle under the certificate of Samuel Smith, and that the decree must be affirmed, unless the sale of the claim for the non-payment of the instalments, and its subsequent redemption, has. vitiated it so that it cannot be asserted against the appellants.
It appears from the auditor’s certificate, that the whole of Samuel Smith’s claim was sold to the state in November, 1808, for the non-pavment of the first instalment, and that 509 acres thereof were redeemed on the 11th of the same month, and that said 509 acres were sold to the sfate in November, 1 SI6, for the non-payment of the fifth instalment,and redeemed and paid on in full on the 9th of December, 1822.
After the title of any individual was purchased by the state, at the register’s .office, for the non-payment of the instalments, it was certainly competent for the legislature to prescribe the terms upon which the Commonwealth would reinvest the owner with his title, hv suffering him to redeem. If. becomes necessary, therefore, to examine with accuracy the various laws prescribing the terms on which redemptions are allowed.
In 1806, the debt due the state for her vacant lands was divided into twelve instalments, t.he first to be paid on the 1st of December, 1807, and so on annually thereafter. In case the instalments were not paid as they became due, sales of the land were directed. If any tract did not bring the instalments and interest due, when offered for sale* it *552 was to be stricken off to the state, and tiiereby her came liable to the future disposition of the legislature. Lands so stricken off were redeemable, however, at any time within two years If not redeemec^ that time the right of the owner became extinct, and the title vested in the Commonwealth absolutely. Ill Li11. Laws, 386. The provisions of this act were not permitted to go into operation from year to year according to the intention of its framers. Various acts were passed granting indulgence to settlers and exempting their lands from sale to individuals, upon their filing certificates of actual settlement, and postponing the sales which would have taken place at an earlier period under the act of 1806. We deem it unnecessary to notice any of these acts but that approved on the 11th Jan, 1816, the provisions of which were annually revived and applied to tiie succeeding year until some time after the redemption took place, which is now .the subject of investigation. The seventh section gave twelve months from the passage of the act to any person whose Tand had been stricken off to the state for the first,second,third and fourth instalments, to redeem.. The tenth section provides, “that no perr son or persons, other than actual settlers, shall be authorized to redeem lands which have been forfeited to the Commonwealth for failing to redeem the same within the time allowed by law, so as to give him, her or them any right, title or claim to the same, where it shall interfere or conflict with the survey of any person actually settled thereon, or with an entry or survey made by virtue of a seminary warrant, and should a grant issue, it shall be void, so far as it does so interfere.” All lands which liave been stricken off to the state, and have not been redeemed within the time allowed for that purpose, fall within the denomination of land “forfeited to the Commonwealth for failing to redeem the same within the time allowed by law.” The sale for the fifth instalment took place in November, 1816, when the certificate of Samuel Smith was sold or stricken off to the state for the non-payment of that instalment. Applying the provisions of the act of 1816 to the year 1817, the owner of Smith’s *553 certificate had a right to redeem it from the effects of having it stricken off to the state for the fifth instalment at any time within twelve, months from and after the 11th of January, 1817 ; but as it was-not redeemed within that time, his right of redemp-lion was forfeited, and, consequently, it might he said, without great inaccuracy of language, that the land itself was forfeited for failing to redeem within the time allowed by law. Subsequent acts continued to confer the right of redeeming notwithstanding such forfeiture, but the right was limited, by the continued operation of the 10th section of the act of 1816, to actual settlers, when the claims redeemed interfered with an entry or survey .made by virtue of a seminary warrant, or with the survey of any person actually settled thereon If, then, the appellees were actual settlers, within the meaning of the said 10th section, they were authorized to redeem Samuel Smith’s certificate from the effects of the forfeiture, and the claim thus redeemed would, in their hands, possess all its original validity ; but if they were not actual settlers, then the redemption was illegal,, and their claim is void so far as it interferes with the seminary claim of the Whites.
The object of the legislature in making redeemed claims void so far as they interfered witli an actual settler or a seminary claim, was to give peace and quiet to settlers and to avoid litigation ; but in favor of an- actual settler, forfeited claims were permitted to be redeemed, and the person owning them, notwithstanding the redemption, reinvested with all the original equity pertaining to the claim ; because between settlers there could he no preference except that which might grow out of the best original title to the land. John Bates, one of the appellees, was actually settled within the hounds of the survey made upon the certificate of Samuel Smith, at the time of its redemption in 1822. He consequently was placed in the condition which authorized him to redeem under the provisions of the 10th section of the act. of 1816, so that when the redemption was effected, he could assert the claim founded on Smith’s certificate, with as much success as if it had never been stricken off to the state. The fact that *554 Garrard &c. had a joint interest with Bates in the 509 acres, and were not actually settled upon the land, cannot operate so as to prevent Bates, the settler, from redeeming the whole claim. It might he contended that as Bates owned a third only, and he alone was actually settled upon the land, that the right of redemption, under the said tenth section of the act of 1816, extended to his third part. only. It seems to us that such a construction ought not to prevail, because Bates’ interest, being joint, extended to the whole tract. He was seized per my et per tout, in legal parlance. His interest and possession extending to the entire tract, his right to redeem must he regarded as co-extensive with his interest and possession, unless the legislature had thought proper to restrict it in express terms.
Hardin and Brown, for the Whites; Turner, Crifíé/nden, and Owsley, for Bates and al.
We have, therefore, reached the conclusion that the claim founded on Samuel Smith’s certificate was rightfully redeemed, and that the decree in favor of Bates, Garrard &c. must he affirmed, with costs.